IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WEIH STEVE CHANG, individually
and as a taxpayer,

    Plaintiff,

v.

JUDGE WILLIAM C. BRADLEY,
STATE OF DELAWARE,
OFFICE OF MANAGEMENT AND BUDGET,
OFFICE OF PENSIONS, and
STATE OF DELAWARE,
DIVISION OF REVENUE,

Individually and/or in their official capacities,

jointly and severally,

    Defendants.

Civil Action No. **16 – 1008 SLR**

### PLAINTIFF'S CONSOLIDATED ANSWER TO STATE DEFENDANTS JUDGE WILLIAM C. BRADLEY, STATE OF DELAWARE, OFFICE OF PENSIONS, AND DIVISION OF REVENUE'S MOTIONS TO DISMISS

Plaintiff Weih Steve Chang respectfully requests that the Court deny State Defendants Judge William C. Bradley, State of Delaware, Office of Pensions, and Division of Revenue's Motions to Dismiss, in their entirety. In support of the request, Plaintiff respectfully states the following.

### JUDGE WILLIAM C. BRADLEY IS NAMED AS A STATE DEFENDANT

Represented by an unusual partnership between government attorneys and private attorneys in defense of a serial pedophile, State Defendants filed their motions to dismiss as if Defendant Bradley were a private citizen. The court records prove otherwise.

At all times relevant to *Kelly v. Bradley* (Exhibit A: 09-cv-00282-LDD) Defendant Bradley "was a Delaware attorney…he is sued as an individual" (paragraph

1

5.) Defendant Bradley admitted to having committed "repeated sexual abuse" of forceful fondling from December 28-30, 1975, prior to his appointment to the state bench.

At all times relevant to *Averill v. Bradley* (Exhibit B: CA No. N10C-07-128 Del. Super) and according to Mr. Wayne Averill's undisputed allegations, Judge Bradley committed unlawful sexual acts upon a foster child under state foster care and/or upon a person on probation from state work release centers, sometimes in judicial chambers in 1990's and continued until 2008. Despite of representation by private counsels, the Court should consider that a) Defendant Bradley committed unlawful sexual acts in his official capacity and in his official places of business; and b) Defendant Bradley's pension is a state compensation for a retired state judge.

Delaware Public Employees' Retirement System ( "DPERS") is governed by its Board of Pension Trustees which is responsible for the general administration of Judicial Pension Plans, including to "hear appeals from State Pension Office decisions regarding eligibility for pension benefits" (Exhibit C: DPERS FY 2014). Upon information and belief, State Defendants, including Board of Pension Trustees of Defendant OOP determined that the known serial pedophile enjoys absolute judicial immunity and therefore remains entitled to receive compensation from public funds. Holding that such action by State Defendants violated the Delaware Constitution and the Constitution of the United States, Plaintiff brought this instant action against Judge Bradley and his fellow State Defendants.

At all times relevant to *Chakirra Wonnum v. Major Fred Way* (Exhibit D: News Journal Article re: CA NO. N17C-01-291 Del. Super) Major Fred Way, a state defendant, used his office to have unlawful sexual contacts with an incarcerated woman. Defendant Judge Bradley in *Averill v. Bradley* procured his victim from a foster home and continued

2

unlawful sexual acts to the same victim in judicial chambers. Under Delaware's Department of Justice scheme and custom of selective prosecution based on color, race, religion, national origin and gender identity, State Defendant Judge Bradley, unlike an African American State Defendant who committed similar crimes on state properties, enjoys absolutely immunity.

Statistical evidence of state prison population and the recent riot at James T. Vaughn Correctional Center in Smyrna, DE, are indicative of profound social injustice in the state.

## AN INCESTUOUS ORGY OF MALFEASANCE
## (ANSWER TO DEPUTY ATTORNEY GENERAL JOSEPH C. HANDLON)

1. For reasons stated above, Plaintiff denies Deputy Attorney General Joseph C. Handlon's ("DAG") claim of "non-State Defendant, former Judge Bradley." Notably, the relationship between Defendant Bradley, a member of judicial branch of the state government, and DAG, a member of the executive branch of the state government, is that of an incestuous orgy of malfeasance in violation of the principle of separation of powers of our government.

First, DAG represented the State in prosecuting to the fullest extent of law Mr. Averill's "Unlawful Sexual Conduct Against a Child and Sex Offender Loitering" (Exhibit E: No. 564, 2011 Order of DE Supreme Court), which appears to be the exact same crime Judge Bradley committed against scores of minors since 1970's according to *Kelly v. Bradley* (Exhibit A), *John Doe v. Bradley*, and *Averill v. Bradley* (Exhibit B).

Secondly, DAG represented all state defendants in *Averill v. Bradley* (Exhibit B) and he has full knowledge of Mr. Averill's pleading. Indeed, Mr. Averill appealed personally and directly to DAG that the same statutes be enforced upon Judge Bradley

3

(Exhibit F: Mr. Averill's April 5, 2012 Letter to Mr. Joseph Handlon).

Thirdly, blatantly disregarding Mr. Averill's lawful demand, DAG severely restricted Mr. Averill's access to the prison law library, supervised by Judge Bradley's case manager, as well as Mr. Averill's access to the state court, of which Judge Bradley has been a member (Exhibit G: May 22, 2014 Order in CA No N10C-07-128 Del. Super and Exhibit H: DAG's May 23, 2014 Response to Judge Jurden).

Lastly, as one of the recipients of the May 27, 2014 Order in CA No. N10C-07-128 Del. Super (Exhibit I), DAG is fully aware that Judge Bradley and the State of Delaware remain the defendants of Mr. Averill's personal injury claims.

DAG's claim of "non-State Defendant, former Judge Bradley" appears disingenuous at best and misleading to the extent that somehow the incestuous governmental relationship between DAG and Defendant Bradley ended now that Plaintiff brought forth a taxpayer claim against State Defendants Judge Bradley, OOP, and DOR.

In a similarly deceiving manner, DAG accused Plaintiff of invoking 42 U.S.C. § 1983 in this instant action, which is literally false. Plaintiff is seeking judicial review, structural injunctions, and/or declaratory judgments, and associated costs and expenses.

2.  Denied. *"The practice of democracy is not passed down through the gene pool. It must be taught and learned anew by each generation of citizens"* (Justice Sandra Day O'Connor on *icivics.org*). As an immigrant, Plaintiff was taught by a retired justice an important civic lesson that the right to petition the court for redress of grievances includes a right to file suit. Plaintiff's civil actions, primarily out of concerns about children's rights and paid for out of his own pocket, arise from an unprecedented number of tragedies involving children in a small state with a population of less than one million. From 1994 to 2009, Dr. Earl B. Bradley sexually molested an estimated eight-hundred-

fifty (850) minors. Despite a celebratory signing of nine "Bradley Bills" in 2010 designed to better protect children from severe abuse, approximately seventy-five (75) children since then, the majority of whom are children of color, such as Ms. Autumn Milligan, died or nearly died while under the watch of the state. These tragedies resulted from an unprecedented level of malfeasance best exemplified by the incestuous governmental relationship between DAG and Defendant Bradley.

DAG also represents the state defendants in a civil action (Exhibit J: CA No. N16C-07-115 Del. Super) filed by the surviving sibling of Ms. Autumn Milligan, which arises from the same cause of action of Plaintiff's other civil actions. Yet DAG requested the Court to deprive Plaintiff and other minors and their guardians of their rights to file suit. DAG's demand is unconstitutional and therefore must be rejected.

3. Denied. DAG's accusations are not only factually false on their face, but also irrelevant to this instant action. They are only intended for character assassination. At the Court's discretion Plaintiff will present state court documents and call witnesses, including one of Plaintiff's attorneys to demonstrate without doubt that DAG's accusations are completely opposite to the facts.

### AS A TAXPAYER AND A PARENT OF AN AUTISTIC CHILD, PLAINTIFF HAS SUFFERED INJURY BOTH PERSONAL AND TRAGIC

As cited in *Nichols v. City of Rehoboth Beach*, in order to satisfy the standing requirements of Article III, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

In May 2008, the Children's Hospital of Philadelphia and the Delaware Autism Program evaluated Plaintiff's minor child, C.D., and concluded that C.D. has moderate autism. Plaintiff requested that C.D. be placed in a mainstream educational setting in his neighborhood elementary school with special education support. The Red Clay Consolidated School District refused and during the two school years from August 2008 to June 2010, C.D., was forced to be bused to a general special educational school, Richardson Park Learning Center, with daily 40-minute bus rides to and from school. C.D. routinely threw tantrums at school that lasted over 45 minutes.

Between April 29, 2009, when *Kelly v. Bradley* (Exhibit A) was filed, and January 25, 2010, when Defendant Bradley admitted his crimes, Plaintiff's out-of-state employment routines involved 5 am to 10 pm daily commutes between Wilmington, Delaware and New York City. Plaintiff received an annual salary of $52,000, $8,000 of which paid for the transportation. Defendant DOR collected taxes out of Plaintiff's $44,000 income for a family of five.

During this time period a school nurse, Frances Avena, frequently called Plaintiff in New York City during the school day requesting that C.D. be retrieved from his school either because of parental neglect and not being prepared for the school day, or because he so frequently threw tantrums during the day. The general special education school setting failed for two years C.D. because the center was not sufficiently equipped to accommodate students with autism.

Because State Defendants knowingly and unlawfully expended public funds to compensate a serial pedophile, C.D.'s schools were never adequately funded and C.D. did not received an appropriate public education because of his disability and his race.

Around April 5, 2010, when *Averill v. Bradley* (Exhibit B) was filed, Plaintiff

6

obtained employment in Pennsylvania, which pays an annual salary of $75,000, out of which Defendant DOR collected taxes. C.D.'s educational needs continued to increase. For the school year from August 2010 June 2011, Plaintiff had to rent from a property owner in Claymont, Delaware of Brandywine School District (Exhibit K: Plaintiff's Rent Check), which has a school appropriate for children of autism called Brandywine Specialized Autism Program ("BSAP").

The property owner is a school district employee. The then Chief Financial Officer of the school district, Mr. David Blowman, now Deputy Secretary of Education of the state, knew that Plaintiff had to transport C.D. daily between Wilmington and Claymont, as his daughter went to the gifted student program at the same location.

Although C.D. improved instantly and significantly at BSAP between August 2010 to June 2012, because of C.D.'s unfortunate requirement of daily transportation between Wilmington and Claymont, Plaintiff had to quit his job. During the two successful years for C.D. at BSAP, Plaintiff sought flexible freelance consulting work under his company, Informatics in a Box, Inc. Plaintiff's clients spread in the states of Rhode Island, Connecticut, Miami, and New York. Plaintiff used ADP for payroll and Defendant DOR collected taxes from his business through ADP (Exhibit L: ADP Invoice for Services Including Tax Filing).

Between August 2010 and June 2012, and because State Defendants knowingly and unlawfully expended public funds to compensate a serial pedophile, C.D.'s local public school was never adequately funded and C.D. did not received an appropriate public education because of his disability and his race.

On the night of September 27, 2013, when C.D. was separated from Plaintiff, C.D.'s father, C.D. was unable to sleep and cried the entire night asking for his father.

7

C.D. and his siblings remembered that Plaintiff always had been the sole wage earner of the family, the only parent who helped them with their homework, and the only parent who drove them to schools and to medical appointments. School records and medical records clearly show that Plaintiff has been the sole advocate for C.D. and his special needs.

## AS AN INTERSTATE TAXPAYER PLAINTIFF HAS STANDING UNDER COMMERCE CLAUSE

Through paragraphs 45-51 of the Verified Complaint, Plaintiff set forth the argument that he has met a steadily narrowed exception to the general rule that merely being a taxpayer does not provide the necessary standing to challenge an expenditure of government funds alleged to violate the Constitution. In *Cuno*, the Court rejected state and municipal taxpayer standing in an Article III court. In *Winn,* the Court clearly distinguished tax credits from government expenditures.

Under the Commerce Clause, Plaintiff has standing to challenge the state laws of taxation and judicial compensation that place an unreasonable burden on interstate commerce in which Plaintiff and his client were affected. Plaintiff brought this instant action under a highly unusual circumstance in that the named defendant admittedly committed interstate crimes causing economic damages to citizens of other states.

A two-part test is used to determine whether a law violates the dormant Commerce Clause. First, a court applies a "virtually per se rule of invalidity" against laws that facially, purposefully, or effectively discriminate against interstate trade. On their face, the state laws of taxation and judicial compensation do not discriminate against interstate commerce.

Second, when the statute regulates even-handedly to effectuate a legitimate local

public interest, and its effects on interstate commerce are only incidental, a court uses the Pike balancing test (see *Pike v. Bruce Church, Inc.*) to examine whether state laws' burdens on interstate commerce are clearly excessive in relation to the putative local benefits.

The Pike Court explained that if a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will, of course, depend on the nature of the local interest involved and on whether it could be promoted as well with a lesser impact on interstate activities.

Because State Defendant Bradley in effect admitted his pedophilia on January 10, 2010, for which there are no records that he ever sought mental health treatment, the burden of proof shifts to State Defendants to show they have a legitimate objective to compensate an interstate serial pedophile at the expense of Plaintiff.

### PLAINTIFF HAS STANDING UNDER THE DUE PROCESS CLAUSE OF THE EQUAL PROTECTION CLAUSE OF THE U.S. CONSTITUTION

In *Shelley v. Kraemer*, the Court noted "the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States." The Court made clear that state action through its legislative, executive, or *judicial authorities* qualifies. Judicial enforcement of common-law rules, as the Court pointed out, satisfies the government action requirement of the Fourteenth Amendment, as does any other official judicial action.

The state judicial system, of which Defendant Bradley is a long-term member, is structurally ill-equipped for a remedy and indeed has erected walls against Plaintiff by repeated violations of procedural and substantive due process (DI#12: Motion for Direct

Certification of Questions of Law with the United States Court of Appeals for the Third Circuit).

Therefore, it is both proper and of practical necessity that the Court shall retain jurisdiction over Plaintiff's federal due process claim (Count III: Unlawful Taxation in Violation of the Equal Protection Clause) and supplemental state law claims. Otherwise for Plaintiff to seek such relief in the state judicial system is equivalent to "negotiating with a tiger for its skin" (a Chinese proverb).

## "NO PERSON IS ABOVE THE LAW"
### (ANSWER TO PRIVATE COUNSELS OF STATE DEFENDANT BRADLEY)

This principle has long held sway in the United States, if not in the state of Delaware. As Justice Miller stated in *United States v. Lee*,

> *"No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it."*

Indeed, under the Constitution of the United States, a federal judge, if convicted in an impeachment, remains subject to criminal prosecution. Article I Section 3 Clause 7 Judgment in cases of impeachment; Punishment on conviction states:

> *"Judgment in Cases of Impeachment shall not extend further than to removal from Office, and disqualification to hold and enjoy any Office of honor, Trust or Profit under the United States: but the Party convicted shall nevertheless be liable and subject to Indictment, Trial, Judgment and Punishment, according to Law."*

Delaware Constitution Article I Section 19 and Article II Section 21 closely mirror the Constitution of the United States. If any officer is convicted on impeachment or through a disciplinary proceeding in the Court on the Judiciary, the officer is immediately removed from office and may be barred from holding any public office in

the future. No other punishments may be inflicted pursuant to the impeachment proceeding or the disciplinary proceeding in the Court on the Judiciary, but the convicted party remains liable to trial and punishment in the courts for civil and criminal charges in accordance of the principle that "No Person is Above the Law."

Here again, the burden of proof shifts to State Defendants to show that they have a legitimate objective to maintain that State Defendant Bradley is above the law.

1. Admitted so far as to re-allege through Exhibits A and B that Defendant Bradley molested scores of minors in multi-jurisdiction states.

2. Admitted so far as to re-iterate through Exhibit A that William C. Bradley, Esq., a Delaware attorney, repeatedly and forcefully fondled 11-year-old Mr. Gregory Kelly in 1975 prior to his appointment to become a judge. Upon such information and belief, Defendant Bradley fraudulently qualified himself to become a state judge to perform purported services, including committing unlawful sexual acts in judicial chambers.

3. Admitted and further alleges that Defendant Bradley receives over $10,000 per month from public funds, which is unlawful and constitutes a significant tax burden that Plaintiff is forced to pass on to his clients and employers in other states.

4. Admitted to the extent that Plaintiff seeks a declarative judgment in Count I based on extensive and undisputed evidence (Exhibits A and B) and other evidence to be amended by further discovery, that Defendant Bradley violated a multitude of state and federal statutes, both civil and criminal.

5. Denied. In *Abbott v. Gordon*, the plaintiff filed a civil action after his loss in a primary election to the defendants. At the time the defendants were under criminal prosecution by federal law enforcement and the plaintiff was granted a stay of his civil

action pending the outcome of the criminal proceeding. Although the defendants were found guilty on some of the alleged criminal offenses, it was determined that those offenses played no role in the plaintiff's loss in the primary election.

In stark contrast with *Abbott v. Gordon,* this instant action arises from an ongoing controversy of a manifested and incestuous orgy of malfeasance. Dr. Bradley and Judge Bradley both were reported to authorities between 2009 and 2010. Victims' accounts (Exhibits A and B) provided overwhelming facts that state law enforcement, such DAG and state judiciary had long known about Defendant Bradley's crime spree and but enabled him judicially and financially to continue his pedophiliac acts, for which there is no cure. It is apparent that other state actors in power and authority deliberately coordinated protection of Judge Bradley by helping him to avoid a trial by jury. Absence of conviction resulted from the obstruction of justice, which thus far enables Defendant Judge Bradley to continue to unlawfully receive state pensions.

The Court will easily recognize that historically it is a difficult undertaking to bring down gangster organizations, who specialize in coordinated efforts to flee justice. Al Capone, head of organized crime in Chicago in the 1920s and involved in everything from illegal gambling to murders, was ultimately brought down by a 1931 conviction for income-tax evasion, but not for murders.

Similarly, the basis for Plaintiff's civil suit is a fraudulent scheme of taxation forced upon Plaintiff and other taxpayers to compensate an interstate serial pedophile.

6.  Denied. In *Reeder v. Wagner*, the defendant was accused of being double compensated by public funds for the simultaneous hours she worked. Such activity discontinued at the time the litigation was filed. The defendant admitted nothing and claimed "that Plaintiff lacks standing because under 29 Del. C. 2504 only the Attorney

12

General can initiate a suit like the one Plaintiff is attempting to bring." The Court saw no controversy as the defendant ceased to receive compensation from one of the two state payrolls.

29 Del. C. 2504(3) clearly established an exception stating "Notwithstanding any other laws, to represent as counsel in all proceedings or actions which may be brought on behalf of or against them in their official capacity in any court, *except in actions in which the State has a conflicting interest*, all officers, agencies, departments, boards, commissions and instrumentalities of state government."

The State has a conflicting interest in this instant action for the following reasons:

    a.    The State and the state judiciary knew that Defendant Bradley is a state actor;

    b.    One of the victims was a foster child under the care of the State;

    c.    The State willingly transferred the control of the foster child, as well as a person on probation to Defendant Judge Bradley for sexual servitude;

    d.    The continuous unlawful sexual contacts occurred on the properties of the State;

    e.    The State and the state judiciary knowingly provided the personnel, vehicles, and other properties to Defendant Bradley in commission of his crimes;

    f.    The State exercises, albeit incidentally, the unlawful taxation and expenditure for a serial interstate pedophile and carries the burden of proof of the putative local benefits.

    7.    Denied. Pursuant to the conflict of interest exception defined in 29 Del. C. 2504(3), Plaintiff has standing in challenging the unlawful expenditure of public funds amounting to an estimated $800,000 since January 22, 2010, when Defendant Bradley

admitted his crimes in writing.

       8.     Denied. In *Trammell*, the Court looked for but did not find that a custom arises from a "course of conduct... so permanent and well settled as to virtually constitute law."

In this instant action, the facts that Defendant Bradley's crimes lasted over three decades and that he remains above the law today is an epiphany of a permanent and well-settled custom of an incestuous orgy of malfeasance – a scheme and custom of selective prosecution and court proceeding based on color, race, religion, national origin and gender identity.

At a minimum Plaintiff stated a federal claim and a state claim in Count III that the unlawful taxation violated the Equal Protection Clause stating "nor shall any State deprive any person of life, liberty, or property, without due process of law."

       9.     Denied. This case is an actual and on-going controversy because a) State Defendant Bradley currently receives a state pension unlawfully expended from public funds by Defendant OOP; b) there remains a pending personal injury case against Defendant Bradley (Exhibit B); c) Defendant DOR continues to collect taxes from interstate commerce in preparation of public funds to compensate an interstate serial pedophile; and d) the unlawful expenditure of public funds in compensating Defendant Bradley will continue without declarative and/or injunctive relief.

      10.    Denied. The Court should recognize that a) Plaintiff stated that his ongoing injury resulted from unlawful taxation of his interstate employment and business activities; b) allegations made by Mr. Gregory Kelly, Mr. Chris Pierce, and Mr. Wayne Averill are not merely conclusions and but in fact have been proven by Defendant Bradley's own admission; and c) based on judicial experience and common sense and

upon consideration that it is highly unlikely that state courts would ever render judgment against a member of their own, Plaintiff's allegations give rise to an entitlement to relief.

11.     Denied. This instant action named Defendants individually and/or in their official capacities, jointly and severally. As in the 1970's when Defendant fraudulently concealed his crimes, which would have disqualified him to become a judge, he also has deliberately maintained his eligibility for state pension.

Defendants conspired to create a secretive consent agreement in order to continue to unlawfully use public funds to compensate a known serial pedophile in violation of Plaintiff's constitutional rights by improperly burdening or discriminating against interstate commerce. The ongoing taxation by state defendants to fund such unlawful expenditure constitutes deprivation of Plaintiff of property without due process of law.

12.     Denied. The arguments are echoed accusations between government attorneys and private attorneys and are intended for character assassination.

## CONCLUSION

In a small state with a population of less than one million, a duly licensed physician Dr. Bradley established a medical practice, and a duly licensed attorney Mr. Bradley established a legal practice and later became a state judge. Both Dr. Earl B. Bradley and Judge William C. Bradley perpetrated unimaginable abuse against children of this state and other states.

Since State Defendant Bradley's own admission of guilt, State Defendants insidiously and unlawfully expended more than $800,000 of taxpayer's monies to compensate a known serial interstate pedophile at the expense of important public services, which include providing adequate and appropriate public education to Plaintiff's autistic son. State Defendants Bradley, OOP and DOR committed private wrongs and

15

inflicted civil injuries upon Plaintiff as a taxpayer.

As Mr. Wayne Averill was released from incarceration on February 17, 2017, the community will soon learn that State Defendant Bradley utilized governmental properties and personnel in procuring an at-risk youth for sexual servitude. State Defendant Bradley inflicted both private wrongs to Mr. Averill, and public wrongs to the entire community in its social aggregate capacity.

For reasons stated above, Plaintiff respectfully requests that the Court deny State Defendants' Motions to Dismiss in their entirety.

Respectfully submitted,

Weih Steve Chang
With Gratitude to Jed and Deep Throat

122 Pumpkin Patch Lane
Hockessin, DE 19707
(302) 494-9992

March 6, 2017

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WEIH STEVE CHANG, individually and as a taxpayer,<br><br>    Plaintiff,<br><br>v.<br><br>JUDGE WILLIAM C. BRADLEY, STATE OF DELAWARE, OFFICE OF MANAGEMENT AND BUDGET, OFFICE OF PENSIONS, and STATE OF DELAWARE, DIVISION OF REVENUE,<br><br>Individually and/or in their official capacities,<br><br>jointly and severally,<br><br>    Defendants. | Civil Action No. **16 – 1008 SLR** |

## ORDER

Upon consideration State Defendants' Motions to Dismiss is hereby **DENIED**.

IT IS SO ORDERED.

JUDGE: _____

DATE: _____

CERTIFICATE OF SERVICE

CA NO. **16 – 1008 SLR**

I hereby certify that on March 6, 2017, I served a copy of the foregoing Plaintiff's Consolidated Answer to State Defendants Judge William C. Bradley, State of Delaware, Office of Pensions, and Division of Revenue's Motions to Dismiss document upon the following Party listed below by email.

JOSEPH C. HANDLON, ESQ.
CARVEL STATE BUILDING, 6TH FLOOR
820 N. FRENCH ST.
WILMINGTON, DE 19801
joseph.handlon@state.de.us

MARK L. REARDON, ESQ.
ECKERT SEAMANS CHERIN & MELLOTT, LLC
222 DELAWARE AVENUE
7TH FLOOR
WILMINGTON, DE 19801
mreardon@eckertseamans.com

Weih (Steve) Chang
122 Pumpkin Patch Lane
Hockessin, DE 19707
302-494-9992

DATED: **March 6, 2017**