Exhibit B

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEWCASTLE County

EFiled: Jul 23 2010 2:50PM EDT
Transaction ID 32301238
Case No. N10C-07-128 PLA

WAYNE AVERILL
             Plaintiff,

V.

Governor Jack Markell
William C. Bradley

STATE OF DELAWARE,

Alex J. Smalls,

Carole Kirshner

             Defendants.

CIVIL ACTION #

N10C-07-128 PLA

Jury Trial Demanded
12 persons
* Defendants requested to
answer all complaints
against them.

## Preliminary Statement

This is a Civil Action filed by Wayne Averill, further known as "John-Doe", against William C. Bradley JR, further referred to as Def #1, Alex J. Smalls — Chief Judge of the Court of Common Pleas — Carol Kirshner — the Courts Administrator, The State of Delaware, as would be responsible; which Plaintiff wishes this Honorable Court allow him to add the proper parties as he learns them.

This Action was filed by Plaintiff, in hopes that he receive damages — as appropriate — and injunctive relief for the continuous sexual abuse of a child, sexual assault and sexual battery — while in this Honorable Court Building by a member of the legal cloth — from July 1990 — April 2008 — by William C. Bradley JR.

## Theory of Psychology

Plaintiff, John-Doe, asserts this is a case of consistent and continuous sex crimes, William C. Bradley, JR committed on a child who had never had shown love, never had family; had been a ward of the State since 5 months

of age, yet kept his hope alive even in the midst of the crimes perpetrated on him. A child who was looking for "family" and love from anywhere he could find it. These crimes where repeated on him over a period of 18 years, both in Def #1's home and in his place of work... In the N.C.C. Courthouse, his private chambers, old building and current building.

These abuses were unbroken, except by plaintiffs' own prison terms for similar..."mirrored crimes".. Exposures; etc. The abuses would continue immediately upon plaintiffs' release. Plaintiff that all of these abuses And plaintiffs' own "mirrored" crimes, are ALL connected, ALL related and ALL relevant to the case at hand.

a.) Plaintiff believes that the psychology for his abuses and returned "visits" lay in the hopes that Def #1 would eventually honor his promises: stop abusing him, provide him with stability, a place to call home and. his adoption. The psychological term being Stockholm Syndrom. (?)

b.) Plaintiff believes in theory that his being sexually abused and returning, are similar to the current case of California v Garrido and numbers of other non-published cases. Jacee Dugard was kidnapped, as a child, sexually abused and made to live in tents behind her abusers home. However, when her abuser drove her into town, she was free to walk where she wished, often being left alone for long periods of time while he shopped or gave college lectures, she never left...

Plaintiff, states that like Jaycee he was conditioned as a child, to return to his abuser and as an adult that conditioning remains... Just like Jaycee

Plaintiff is not a psychologist, but has basic common sense in seeing patterns. He believes that he kept holding on to the illusion of "Home", a place of his feeling belonging to. He now sees that such will always remain an illusion, until he receives the treatment he requests throughout this motion.

P... ?

Plaintiff prays that this Honorable Court see through the dense fog of lies that Def #1 raises and grant the Plaintiff his long needed relief, so that he can get the treatment he needs in order to feel connected to those around him, not the worthless one that doesn't deserve family; so he can REALLY believe that none of this was his fault, and receive the additional treatment that'll allow him to stop committing his own "mirror" charges of exposing, etc.

Plaintiff believes that there is much "therapy" needed in order to feel any sense of normalcy. Plaintiff begs this Court to now see his bare roots beginnings; how he came to this point and see that he does remain a victim until healed, not deserving to just be thrown away again.

Plaintiff further believes that since nearly everyone of his exposure crimes and U.S.I. 3rd (was 22 living with a 14 year old girl while living in Townsend & was also "visiting" DEF#1 at his home) happened shortly after his abuses, that this Honorable Court examine plaintiffs' abusive history in respect to his current 10year prison sentence for one Exposure, see that treatment [unavailable in prison] is needed, is made available to him.

Plaintiff also claims that he and others have exhausted themselves in thier attempts to have DEF#1 held criminally liable for his known 40 plus years of sexually abusing children. He know of 27 current victims, more step forward in hopes that they will have Justice. A public apology, admittance of guilt for 2 separate occassions of molesting children, yet he remains free; collects; full retirement and does not need/have to register as a sex offender? Plaintiff simply wonders how many lives Def#1 must destroy before someone gains the courage needed to act. This great state should be above the politics involved with investigating a judge. The failure of the State of Delaware to act confounds the plaintiff.

Page 3

<u>The Laws of Authority</u>

Plaintiff recognizes that he knows nothing of the law and asserts that while these laws look proper, that they may not be. Plaintiff also believes that his motion likely lacks laws more beneficial to his case. However, the plaintiff has very little access to law information and this motion has a deadline of April 24th or 25th of 2010.

Plaintiff pleas to this Honorable Court to consider his motion based on the facts, as this is all he knows.

1. Superior Court Civil Rule 9 — States that the Plaintiff can name ANYONE or ORGANIZATION regardless of it's title or capacity.

2. 10 Del. C §4001 — Limit on Civil Liability states that the elements the State or it's employees must meet, for immunity from civil liability — the defendants can not meet these elements.

3. 18 Del. C. §6511 — Waives "sovereign immunity" without limit if there is applicable insurance coverage contracts.

4. 10 Del. C. §8145 — Waives the Statute of Limitations on the sexual abuse of minors.

5. The rule or Calafornia v. Phillip Garrido. A child kidnapped held until an adult yet when permitted to walk around town freely, she ALWAYS returned as an adult. Page 4 Conditioning by Garrido as a child.

Parties:

1. Defendant Carole Kirshner is the Court of Common Pleas Admin-
-istrator and responsible for all CCP activities on the floor. She
is being sued in her Official capacity and individual capacities.

2. Defendant Alex J. Smalls is the Court of Common Pleas Chief Judge
and is responsible for all activities his staff enters into while
in the Court of Common Pleas areas. He is being sued in his indiv-
idual and Official capacities.

3. Defendant William C. Bradley, JR, is being sued in his official
and individual capacities.

4. Defendant State of Delaware employs and oversees all above defend-
ants at the current and previous New Castle County Court House.
The State of Delaware is being sued in it's o

5. All the defendants have acted, and continue to act, under color of
state law at all times relevant to this complaint.

6. Defendant Governor Jack Markell in his official capacity over Def #4 and
in the Court.

7. From approximately June of 1990 to April 2008, def #1 committed
"prohibited sexual acts" on plaintiff —John Doe— as a child and
adult. These "prohibited sexual acts" (PSAs) occurred in Def #1's
home and his chambers at the old courthouse and new courthouse.

8. During the time of Def#1 abusing John Doe, John Doe was in foster-care near Def#1 in Townsend Delaware during the summer of 1980.

9. Plaintiff was visiting his mother and sister, went into the woods with his mothers BB gun when she left, It began raining, plaintiff got lost — patch of woods approx 12-15 acres ↕ and 150 acres ↔ — came out of woods behind Def#1's home. Plaintiff knew that he could follow the roads back to his mothers home. Plaintiff saw a home, walked towards it and before he reached Def#1 home. Def#1 came towards him with what appeared to be a shotgun. Def#1 told plaintiff, "Put the gun down son." Plaintiff did so. Def#1 walked to the BB gun, picked it up and laughed.

10. Def#1 asked plaintiff what he was doing out here.

11. Plaintiff didn't want to being lost, so he said that he planned to walk the roads back to his mothers. Further explaining where she lived and her name.

12. Def#1 said that he "knew of" plaintiff's mother, but "not personally."

13. Def#1 explained to plaintiff that he could not allow plaintiff to walk the roads with a "gun", that it was illegal.

14. Def#1 offered plaintiff iced tea, plaintiff declined offer. Defendant always had iced tea.

Page 6

15. Def #1 told plaintiff that he would drive him back to his mothers

16. During brief ride, def #1 asked why plaintiff was in foster care, why he did not live with his mother and where his dad was.

17. Plaintiff explained as best as he knew.

18. Def #1 acted kind and genuinely concerned about plaintiff during the ride.

19. Def #1 gave plaintiff his home phone number, telling plaintiff that if he ever wanted to talk ... about anything, than just call.

20. Plaintiff felt happy that an adult would seem this interested to get to know him. And in return gave Def #1 his phone number.

21. Niether def #1 nor plaintiff called one another until maybe 3 weeks later ... After plaintiff got into trouble for making a "speed-bump" on his foster home's street.

22. Shortly after Def #1 called plaintiff

23. Plaintiff did not recognize Def #1's voice or connect the name to the previous meeting at Def #1's home.

24. Def #1 used his formal title of Judge ... in addressing plaintiff.

25. Upon hearing "Judge", the plaintiff was on high alert not knowing what he had done, more like what he was caught doing now.

26. Def #1 cleared up the confusion and laughted at it.

27. Def #1 told plaintiff that he knew about the arrest, asked plaintiff what he was thinking, said that, "someone could have been hurt".

28. Def #1 told plaintiff that he "needed a good adult role model in his life." That if he did, then plaintiff would never have torn-up the road.

29. Def #1 told plaintiff that he wanted to "talk" to plaintiff and invited plaintiff over.

30. Plaintiff said that they were talking now.

31. Plaintiff, went to Def #1's home assuming that if he really was a judge that he only had plaintiff's best interest at heart. Additionally, boys were not taught to fear strangers then.

32. Plaintiff arrived at Def #1's home. Def #1 put his hand on plaintiff's shoulder and walked him into Def #1's home.

33. Def #1 told plaintiff to sit, make himself at home and was asked if he wanted a glass of ice tea.

34. Plaintiff denied offer by Def #1.

35. Def#1 put his hand out for plaintiff to shake. Plaintiff shook Def#1's hand

36. Def#1 commented on plaintiff having a strong hand shake.

37. Def#1 released plaintiffs hand, sat down in his chair — in his living room — patted his knee and told plaintiff to sit on his knee.

38. Plaintiff felt weird, initially said no, but eventually did sit on Def#1's knee, because of Def#1's persistance and figured that if he couldn't trust a judge than who could he trust.

39. Def#1 always looked plaintiff in the eyes on every conversation and request. Def#1 asked plaintiff to hug him.

40. Def#1 said "these are things fathers do with their sons... Wayne"

41. Def#1 released plaintiff from hug, staring plaintiff in the eyes as he placed his hand on plaintiffs knee.

42. Def#1 began to ask plaintiff questions about his life, school, friends and then girlfriends.

43. Def#1's questioning plaintiff about his girlfriends became very vulgar, asking if plaintiff had done this or that with his girlfriends, to how it felt.

44. As Def #1 asked these questions of plaintiff he was rubbing plaintiffs Knee, working his way down plaintiffs thigh until the back of his Knuckles were up plaintiff's shorts (umbros) and resting against plaintiff's penis. Def #1 Never allowing a break in eye contact.

45. Def #1 asked plaintiff how he felt. Plaintiff said, "wierd".

46. Def #1 said that it was "just a feeling" that the plaintiff, "must get use to it," "because" plaintiff needs to "learn to let go, trust and love".

47. Def #1 made all of above seem like a lession on how family interact and that he was teaching plaintiff this.

48. Plaintiff's family experience mounted only to the ways he equated his "love" and relationships with girlfriends, and sexual gestures were a part of this expression.

49. Def #1 knew this and exploited a child... The plaintiff. Further confusing the plaintiff about life.

50. Def #1 withdrew his hand from plaintiffs shorts and instead placed his hand onto the top of plaintiffs shorts on his private area, and began to rub plaintiff there.

51. While keeping his intense stare Def #1 moved his hand under plaintiffs shorts touched and rubbed/molested, skin to skin.

52. Def. watched plaintiff's face; his embarrassment; his confusion; his pain and his shame.

53. Plaintiff believes that this is one of the many ways in which the Def.#1 "got-off," by instilling powerlessness, confusion and shame over his victims.

54. Plaintiff believes that he never had the courage to tell before is because: a) he had no family who'd care to listen; b.) If he reported Def #1 to the police, that nothing would be done... Just as the rest of his 27 other victims were unable to do... Just as now. c.) plaintiff was a low-life kid who couldn't even have a family — while Def #1 had every power, the plaintiff had none.

55. Def #1 never asked plaintiff not to tell.

56. This time and everytime thereafter the Def would start the "visits" with asking plaintiff if he wanted to be adopted. Said that plaintiff needed a good place to call home.

57. Plaintiff always responded positive to these questions, it was his childhood hope, he still feels like that boy.

58. After every abuse plaintiff would ask if he could live there, if Def #1 would adopt him.

Page 11

59. Everytime after the abuses the plaintiff would again ask about living there and adoption.

60. Def#1 would say... "I don't know    ," "I need more time to get to know you."

61. Def# knew everything about plaintiff's life, past and present.

62. Plaintiff says that he went back to Def#1's house approx. 8 times during this time — +/- 1year.

63. During the second visit, Def#1 did all the shaking hands, hug and now Def. has plaintiff sitting in his lap — not on his knee — Plaintiff wore cargo style shorts so Def#1 couldn't stick his hand up them. Defendant #1 is rubbing plaintiff through his shorts.

64. Def#1 asked plaintiff to get up, stand in front of him, then asked if he could see plaintiff's penis (Def#1 used the term "cock".)

65. Plaintiff believes that he nodded yes but is unsure.

66. Plaintiff believes that he unzipped his shorts on his own, but is unsure.

67. Def.#1 pulled plaintiff's penis out and began to molest plaintiff, as plaintiff nervously looked away so that Def#1 could not look him in his eyes.

68. Plaintiff states that everytime this happened his left leg would nervously

—Spasm/shake.

69. Plaintiff states that during his 3rd or 4th visit, plaintiff felt something different, looked and it was Def #1 committing felatioon him, with Def #1 own flacid member out in his hand.

70. Plaintiff immediately pulled away but Def #1 pulled plaintiff to him by his buttocks.

71. Plaintiff did not answer Def #1's calls or pages.

72. Plaintiff told Def #1 that he'd come over but none of the other stuff.

73. Def. manipulated plaintiff to "see" his penis again. Once again Def. #1 committed felacio on plaintiff and had his penis in his hand.

74. Def asked plaintiff to touch him and perform felatio on him.

75. Plaintiff said "no, absolutely not", was sickened.

76. Def #1 told plaintiff, "Why, I do it for You".

77. Plaintiff again did not answer Def #1's calls or pages.

78. Plaintiff cannot say what was responsible for his continued returns to Def #1's home and court chambers as a child and adult, plaintiff knows there is a term to describe this and has been told, by a psychotherapist that this condition

maybe called Stockholm Syndrom. However plaintiff does not know.

79. Plaintiff returned 3oc4X, quit coming around and shortly after his foster parents doors are kicked in by what looked like SWAT. .
— Judge Burns told everything— and plaintiff's foster parents home was busted and plaintiff moved to a 'temporary' foster home simply to finish out that grade.

80. Plaintiff is moved to the Childrens Home in Claymont in 1992-94.

81. Plaintiff called Def.#1 at court.

82. Def.#1 told plaintiff to take the #1 bus to the Courthouse Steps.

83. Def#1 told plaintiff to come into the Courtroom and once he saw plaintiff he'd take a break and speak with plaintiff. This is during the summer of 1992.

84. Def#1 takes plaintiff into his chambers— plaintiff also states that he can accurately describe Def#1's old and new chambers.

85. Plaintiff shook Def#1's hand, returned Def1's gesture for a hug and sat down.

86. Plaintiff requested Def #1 to get him out of the Childrens Home because he knew the other kids thought less of these children.

87. Def#1 told plaintiff, "let's talk about that later Wayne," And motioned for plaintiff to come over to him.

88. Def#1 commented on plaintiffs growth, then asked if his penis grew too.

89. Plaintiff believes he shrugged his shoulders.

90. Def#1 asked if he could see.

91. Def#1 unzipped plaintiffs pants and pulled out his penis, masterbated him and committed felecio on plaintiff while making vulgar remarks.

92. Plaintiff always did what Def#1 asked but looked away every time while he never ejaculated and his leg always nervously shook.

93. Plaintiff states that as always, Def#1 would avoid talks with plaintiff about adoption and home.

94. Plaintiff states at the time Def#1 was the only adult who showed him any attention.

95. Plaintiff felt that he had an extremely difficult life and if being sexually abused would get him a "home," where he could come back to even after he left, than the abuses would be the price he must pay.

96. Plaintiff only gave into Def#1's request to "come by" the court may be only 1-3x/month. Some months plaintiff states that he was so angry at Def#1's lies that plaintiff might only show up 1x that month.

97. Plaintiff states that this happen for 2 years while he was still in high school.

98. Plaintiff states that Def#1 would tell him a good story once in a while instead of _only_ sexually abusing him during a visit to chambers.

99. Plaintiff was told stories about a boy Def#1 helped get into the military; Others about how he wanted to take plaintiff hunting at his hunting cabin / lodge in some place like Wyoming or Montana.

100. Defendant might even ask plaintiff about his dreams or ambitions.

101. Plaintiff would always excitedly state "Army... Special Forces."

102. One of Def#1's pictures in his chambers was of a guy in full-dress.

103. Def#1 said that he helped him — in picture — as he could with plaintiff, If "plaintiff would "just let me".

104. Plaintiff enlisted on his own and had a June or July departure date.

105. Plaintiff was side swipped by another car only days prior to his departure

date. Plaintiff was diagnosed by multiple neurologists, all coming to the same conclusion: besides the frontal skull crack, there was T.B.I. (Traumatic Brain Injury) with Cognitive Deficits, no short term memory, and reduced recall. They stated that plaintiff could never hold more than a menial job. because now his I.Q was only 75, and his ability to remember (Non emotion producing facts) was greatly impaired.

106. The U.S. Army told plaintiff they could no longer take him, that he could be a danger to himself and his unit.

107. Plaintiff asked Def#1 for a place to heal.

108. Def#1 responded by telling plaintiff to "come in and we can talk about it. This was June 1994, Chambers.

109. Plaintiff asks this Honorable Court to bare with him and forgive taking this court backwards now.

　　1). Plaintiff lays claim that because of Def#1's abuses of him in both Def#1's home and both the old and new Courthouse Chambers that plaintiff has incurred the "side-effect" of acting out/ Indecent exposure, dating back to the Summer of 1991 where he exposed himself at camp. b) his second exposure in 1992 during the summer

　　2) Plaintiff claims that when he was not around Def#1 for some time, he would not expose. However, shortly after the abuses began again, he would consequently expose. As is why he is in prison now (for 1 count of exposure which violated his probation and earned him 10 years in prison). is one and the same.

Page 17

110. Due to Def #1 denying plaintiff a place to stay to recover from some of his injuries, plaintiff slept on the roof of a school and walked the streets by day.

111. Plaintiff ran into guys he knew of in high school. They said he could stay with them if he would sell marijuana for them.

112. So began Plaintiff's criminal life.

113. Plaintiff tells Def #1 how he was surviving on his own June 1994.

114. Plaintiff is arrested — all over a drug debt someone owed his roomates.

115. Plaintiff goes to Def #1's chambers only 3-4x from the summer of 1994-1995.

116. Plaintiff moves away from North Wilmington after being arrested for crimes relating to drugs, marijuana.

117. Eventually plaintiff makes it to Newark, went back to school.

118. Plaintiff occassionally does as Def #1 asks, and stops by his Chambers, ending up going on an exposure spree after.

119. Plaintiff states that his exposures/"mirrored crimes" were not acts of sexual pleasure, but one of numbness. One where he looks away as the exposure/act is done... Thus mimicing his own embarrassment that Def #1 instilled on to him — he looked away as he was being abused to avoid the shame and embarrassment, — by embarrassing his victims by exposure.

120. Plaintiff does not understand the sequence of abuses and how they relate to his exposures shortly after, but he believes his condition is in direct relation to Def#1's abuses on him. Plaintiff further states that he believes that his exposures are an escape of sorts from his own pain of recent abuses. Plaintiff states he feels numb during his "mirrored" crimes.

121. Plaintiff gets 18 months in prison for his exposures. Early 1996.

122. Plaintiff does the Key Program and gets out in 12 months to go to the Crest.

123. Def#1 told plaintiff that once plaintiff got to the Crest/Plummer Center that he could "come home."

124. Plaintiff makes it to the Crest/Work-Release Center, asks Def#1 if he can still come to his house for weekend furlough passes. (Late 1996 - early 1997.)

125. Def#1 says to plaintiff, "We'll see." Never following through.

126. Def#1 tells plaintiff to "just come in and we'll talk."

127. Plaintiff tells Def#1 that the Crest/Plummer Center won't "just" let him do anything.

128. Def#1 tells plaintiff, "I'll make sure you don't get into trouble."

Page 19

129. Plaintiff sneaks to the Court maybe 2-3x/month for those 4 months as instructed by Def #1.

130. Def. gave his legal aid — young male — the keys to his car one time and told his legal aid to take plaintiff back to the Plummer; make sure he gets in alright, walk him in if you have to.

131. Plaintiff excepted everything except the walk in.

132. Plaintiff stops sneaking to Court to "see"/"talk" to Def #1.

133. Def #1 calls the Plummer Center Duty Office telling the officers that he "had" to speak to plaintiff.

134. The officer pages plaintiff stating that he had a call "in" the duty office.

135. Plaintiff is afraid to go to the duty office because being told that you have a call "in" the duty office NEVER happens. Its not normal.

136. Plaintiff gets on the phone and Def #1 says "Hi Wayne." Asking plaintiff why he hasn't been around. Then told plaintiff to come in.

137. In the spring of 1997 plaintiff was on the phone with Def #1. Plaintiff was looking to move. Def #1 told plaintiff to get a place near him in Townsend.

138. Plaintiff rented a couch to sleep on in his mothers Townsend home.

139. Plaintiff moved again to his sisters best friend's fathers home, also in Townsend.

140. Plaintiff went to Def#1's home — at Def#1's request once, sometimes twice a week, sometimes not at all, plaintiff had just begun college again. This is up to plaintiff's own arrest — EARY September 1998.

141. Plaintiff is in prison until October 2007.

142. Upon plaintiff's release from prison into the work release system, plaintiff calls Def#1 to let him know that he is a free man. Plaintiff was proud and wanted to tell everyone / anyone.

143. Plaintiff had more interactions with Def#1 over the last 18 years than any of his actual family and wanted to share the happiness of being free with others he most knew. Unfortunately this was also his abuser, a man the plaintiff hated with every once of his being.

144. Def#1 repeatedly asked plaintiff to "come by" his chambers "just to talk".

145 Eventually plaintiff asked his work release counselor (at the Plummer Center around February 2008) (Plaintiff does not remember her name except she was middle-aged, 5'6"-5'8" shoulder length black-haired Italian woman)

146. Plaintiff's counselor said "No", that he could not go without an official summons for a courtcase or something.

147. Plaintiff told Def #1 this. Again Def #1 told plaintiff to "just come in... I'll make sure that you don't get into trouble".

148. Plaintiff first went in around early March (?), went directly to his chambers (as instructed)

149. A very short receptionist-sort had him sign in and walked him back to Def#1's Chambers.

150. Once inside Def #1's chambers, Def #1 told plaintiff that jail had "preserved" him "well" and that he looked good.

151. Def #1 asked plaintiff if he had had any sexual relationships in prison, male or female.

152. Plaintiff was offended that the Defendant was so forward and that this is all that the Def #1 thought of. Plaintiff said, "No."

153. Def #1 told plaintiff to come and give him a hug.

154. Plaintiff did so.

155. Plaintiff let go and took a step back so that he could look at Def #1.

156. Def#1 touched plaintiff's pants — in private area —

157. Def#1 told plaintiff, "Wayne, I'm an old man now... Things don't get up for me anymore". Then said, "Do things still get up for you Wayne?" Then adding, "let me see", after plaintiff shrugged his chambers

158. Def#1 sat in his chair telling plaintiff, "Come here... I haven't got all day (or some very simular wording)

159. Plaintiff begrudgingly complied with Def#1's request.

160. Def#1 unzipped plaintiff's pants, removed his penis, molesting and committing felatio on plaintiff as he nervously looked away, did anything he could to distract himself from this.

161. Plaintiff asked Def#1 if he could do his weekend furloughs — from the Plummer Center — at Def#1's home.

162. Def#1 told plaintiff that he currently had a young couple with a young child living there, but that he'd see.

163. Def#1 repeatedly called plaintiff. Plaintiff either would not answer or pick it up only to hang up. Plaintiff was not believing Def#1's lies anymore.

164. Plaintiff did eventually answer.

165. Def#1 told plaintiff he had thought about it and did want to "help" him

Page 23

with a place to stay, but would be temporary and that plaintiff could not do drugs or get into any legal trouble while there.

166. Def #1 told plaintiff to come by sit in his court room so that Def #1 would know exactly when to recess. Def #1 said that he'd take plaintiff out to lunch — plaintiff did this on occassion from the old court to the eatery next to the courthouse. Def #1 offered plaintiff to eat with him at the Greenroom too. Plaintiff did not want to make a very ackward situation worse by going to an expensive place to eat.

167. Def #1 saw plaintiff in the court room, finish the case he was hearing, goes to his chambers, where plaintiff is to briefly meet him there, then go to lunch. Def #1 meets plaintiff in the reception area and walks plaintiff back to his chambers
(now late April or early May.)

168. Plaintiff believed Def #1 would finally give him a place so he could finish his Plummer Center/ Level IV time there. Instead Def #1 tells plaintiff to come to him, to hug him. Judge Bradley sits down and molests plaintiff and commits felacio on plaintiff.

169. After this was over Def #1 said, "You are going to get me into trouble Wayne." (This was the last thursday or friday of April — maybe the 24th or 25th 2008)

170. Def #1 continued to call plaintiff, this only added more stress to his continued confusion over how such a person, in such a trusted position could do such stuff to him, ₉  ₂₅

Claims for Relief

171   Plaintiff claims the continuous sexual abuse of a child and sexual battery of an adult from appromitly July 1990 to approximately April 24th or 25th of the year 2008. The Defedant #1 committed these crimes at both his home and the old and New New Castle County Court Judges Chambers.

172. Plaintiff claims diliberate indifference by defendants Carole Kirshner and Alex J. Smalls because Mrs. Kirshner and Mr. Smalls should have taken notice when a child is coming and going inside a judges chambers and seen these occurances as odd. Although they did not have direct participation they did fail to act. Both Defendants had the power to correct these violations and it was thier Duty to act, yet they stood idle, negligent.

173. The State of Delaware employs each defendant and although may not have been a direct participant, was able to act to resolve this situation much earlier. Maybe if they had, the 27 current victims would not be victims at all. The State of Delaware is also negligent.

174. Plaintiff makes claim of irreversible harm as plaintiff regularly relives these abuses in his sleep and as a "side-effect" of his abuses by Def#1, plaintiff has created a record in criminal court too. Plaintiff claims that he only went out after his own abuses and exposed. Plaintiff has become a reflection of his abuser.

175. Plaintiff claims that because the abuses were constant and uninter-rupted (except for his own prison terms for simular, Mirrored crimes) that this honorable court should count plaintiff's first abuse to his last as one continuous string of abuses and consider that plaintiff continued to return through years of turmoil, which plaintiff has been told by a person of the psychological field — that he may have what is refered to as Stockholm

Syndrom. A simular case would be the Jaycee Dugard case where she was kidnapped as a child, made to commit sexual acts, became an adult there, yet when she was taken into town and left alone to walk around while her captor went shopping or gave a lecture at the local college, but she never left. Here the plaintiff was abused by an adult whom was a judge, continuously offered a place to call home and believed that Def#1 would come through on his promise. Plaintiff was a child alone in the world since 5 months of age. This hope is all he had to hold onto. Eventually becoming an adult still keeping hope for a home, a connection. Def#1 took advantage of plaintiff and continued in his Townsend home and both of his judges chambers, in the old and new court building, which consequently are owned by the State of Delaware.

176. Plaintiff wishes that this Honorable Court not side with this monster but take the high road by being the ones to finally hold this person accountable for his 40 known years — 1968-2008 — of sexually abusing boys/children, by taking him away from society and incarcerating him.

177. Previously plaintiff was told that such an accusation toward a judge was unheard of and that it could damage his case. He was told that if he pressed it he was crazy.

178. The Plaintiff would also like to point out that he was afraid to tell anyone from the Court

179. Now that Judge William C. Bradley Jr (Def#1) is no longer a judge the plaintiff's and 27 others (current on the website) fears of retribution by this judge have lessened. Plaintiff now believes that he can begin to let his past be known — to the Courts only — plaintiff wishes to

let go and heal but doesn't know how. This is where the plaintiff begs this Honorable Court to look beyond his current crime of exposure, to see this action's beginning and to see him alone in the world as a boy, devoid of any sense of family, belonging or love. A boy extremely vulnerable and easily manipulated by the idea of having a home, of being adopted, of belonging, of being told, "this is what fathers do with their sons Wayne... Relax," while having plaintiff sit on his lap or knee, keeping his stare into the boys eyes as Def#1 slides his hand up the boy's shorts. The boy couldn't tell if Def#1's stare was to reassure him that these actions were alright or something else.

180. Plaintiff begs this Honorable Court that if nothing else that this Court see the damage done to plaintiff by the Defendants active or inactive participations, that his needs for extensive therapy, reconditioning and healing are needed to put an end to a cycle Def#1 started, so that no further victims (of any kind) are created.

## Relief

The Plaintiff never told anyone about his abuses because he believed that Def#1 would eventually fullfill his promise; because he believed that no-one would listen to a low life child (or adult) over a judge; and because this information could only further hurt his legal matters. Plaintiff now brings this civil action because:

(1) He has reduced fears of retribution from the Delaware legal System because Def#1 has been retired and CANNOT further hurt him.

b). Plaintiff recently received a 10 year prison sentence — for 1 Index Expo episode — and feels he has little remaining to lose.

c). He cannot heal, get help that he needs — so that he can end his own "mirrored" crimes cycle — without making those active and inactive responsible participants pay (both literally and figuratively).

Additionally, plaintiff brings action in search of a long overdue closure to this issue, of his pains and in receiving help to move on.

Plaintiff COMES NOW requesting that this Honorable Court grant him the following relief :

A.  Issue a declaratory judgement stating that:

   1.  That the sexual abuse of plaintiff over a period of 18 years — as a child forward — by defendant Bradley at his home and old and new chambers was an ongoing abuse of a child and man and constitutes charges of Rape = Fca Child; sexual assualts; the continuous sexual assault of a child into his adult hood, and sexual battery under state law.

   2.  Defendants Kirshner, Smalls, Delaware and the Office of the Governor (currently Jack Markell) failure to take action, question nor stop plaintiff — during those years — from entering the "lions den" (Defendant Bradley's chambers), when anyone besides those of the legal profession enter, especially children, that such policies be enacted to ensure

that no future incidents be allowed to happen.

3. That current Governor Jack Markell and his office are ultimately responsible for the actions and behaviors that his (Governor appointed) judges inflict upon the members of society, especially while IN his Court.

B   Award plaintiff compensatory damages jointly and severally against defendants in the form of:

1. Pay for plaintiff's extensive healing/rehabilitation at the live in Alpha Human Services program at a cost of approximately 80 thousand dollars. This is needed to heal — this facility helps with healing from pasts abuses, then helps stop from continuing the cycle of abuse — and be able to move on in his own life as a "normal" individual.

2. To pay for plaintiff's psychiatric care. This will entail bi-weekly meetings with a psychiatrist and medications for no less than 3 (three) years at a cost of 18 thousand dollars (treatment), and 18 thousand dollars for related medications.

3. To pay for plaintiff to be treated by a psychotherapist weekly for a period of no less than three (3) years at a approximate cost of 23 thousand dollars

4. To pay for life coach weekly in order for plaintiff to give him the guidance, direction needed to live a healthy and productive life after all the turmoil. This therapy should be for no less than two years at a cost of 23 thousand dollars.

5. That defendents Delaware and Governor Markell realize and acknowledge that had plaintiff not ever met defendant Bradley then he would not turned around to commit simular crimes; that plaintiff needs to heal and help correcting his crimes but DOES NOT belong in prison as this cannot help a condition (caused by the State/def. Bradley) of this sort and in turn will:

   a). Release plaintiff into said Alpha Human Services minimum security live in treatment facility.

   b). Upon completion of said program release plaintiff of probation so that he can leave Delaware to be with the only family he knows.

   c). After 2 years without any arrests (F) defendant Delaware will move to expunge his records and move for a downward departure of the Sex Offender Registry to a tier 1.

   d). That defendant Delaware will move plaintiff to a tier 2 (S.O. registry) after successfull completion of the Alpha Human Services live in program (nearly 2 years in length).

   e). That defendant Governor Markell will put into effect a guaranteed pardon of all of plaintiffs past crimes if he remains crime free (not including minor traffic offenses) for 5 years after his release from prison.

   f) Make contact with whom ever runs the federal S.O. registry site and ask them to remove plaintiff if after 2 years from his Alpha treatment he has

not reoffended.

6. Plaintiff be permitted to change his name — without any connection to his past — in order to begin a new (hopefully somewhat healed) life outside of Delaware.

7. That defendant's sign a waiver in case plaintiff later decides to tell his story.

8. That defendant Delaware supply plaintiff with his childhood records... Records from Delaware Child Protective, detention centers, childrens hospitals and all families whom he lived with as well as those families who tried to adopt him. It is plaintiff's hope to piece together the many missing spots of his childhood in order to better understand himself, a part of his healing.

9. Plaintiff seeks an unspecified monetary compensation amount.


C. Award Plaintiff Punitive Damages both Jointly and Severally in the forms of :

1) That all defendants — except Bradley — make the appropriate changes to the policies to which currently allow children (unrelated) and anyone to enter the judges chambers. This is to hopefully prevent other children from being hurt in a place they would feel very safe.

2) That a minimum of a 5 million dollar fine be imposed — 3 million to be donated in plaintiff's name to Delawares Division of Youth & Families First. This should be used to

help children with the most dire of needs first, (abandonded children) and to be placed in good homes. The remaining 2 million dollars to be placed into a fund for prosecutors of those who have harmed children in the ways of abandonment, physical, sexual and emotionally — NOT for the deadbeat mothers of these children, as anyone with sense will know the rampant abuse of this system, current, (welfare, child-support etc, where the majority if any of the monies to care for these children never make it into thier stomachs or on thier backs.)

3) Award monetary damages to plaintiff (unspecified, as yet)

D.  Grant such other relief as it may appear that the plaintiff is entitled:

If asked if any of the things herein (referred to as "awards") makes up for the the many neglects and abuses on an already shatted life of a child or are "fair", plaintiff SCREAMS that none of this is/was "fair." No matter what is "awarded", nothing is "fair." There are no "rewards" here. Plaintiff seeks to ensure that this action makes the defendants assure that future abuses toward children while in the Court will NEVER happen again, and that he can move on knowing this.

Dated: April 5th, 2010

Respectfully Submitted,
Wayne Averill
WAYNE AVERILL #303649
Howard R. Young Correctional Center
P.O. Box 9561
Wilmington, DE 19809