Exhibit J

EFiled:  Jul 15 2016 12:35PM
Transaction ID 59284304
Case No. N16C-07-115 FWW

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TIFFANY GREENFIELD | : | |
| as Next Friend and Guardian | : | |
| *ad litem* for | : | |
| ETHAN FORD, a minor | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : C. A. NO. | |
| | : | |
| BUDGET OF DELAWARE, INC., | : | |
| A Delaware Corporation; | : | |
| DFS DIRECTOR LAURA MILES, | : | |
| *individually and in her official* | : | |
| *capacity*; DFS DIRECTOR | : | |
| VICTORIA KELLY PSY.D., | : | |
| *individually and in her official* | : | |
| *capacity*; NANCY CRAIGHTON | : | |
| M.S.W., *individually and in her* | : | |
| *official capacity as an Investigation* | : | |
| *Supervisor*; JAMIE ZEBROSKI | : | |
| M.S.W., *individually and in her* | : | |
| *official capacity as an Investigation* | : | |
| *Supervisor for DFS;* | : | : NON-ARBITRATION CASE |
| | : | |
| | : | |
| Defendants. | : JURY TRIAL OF 12 DEMANDED | |

## PETITION FOR APPOINTMENT OF
## <u>NEXT FRIEND FOR MINOR PLAINTIFF</u>

The petitioner, TIFFANY GREENFIELD, through her attorney ANDREW C.

DALTON, ESQUIRE, respectfully represents to the Court as follows:

1. That petitioner is the legal guardian of ETHAN FORD;

2. ETHAN FORD has a cause of action against the above named Defendants;

3.  Petitioner is fully competent to understand and protect the rights of ETHAN

FORD and has no interest adverse to said minor;

4.  No previous application for appointment of next friend has been made

heretofore.

/s/ Andrew C. Dalton
Andrew C. Dalton, Esq. (ID 5878)
Bartholomew J. Dalton, Esq. (ID 808)
DALTON & ASSOCIATES, P.A.
Cool Spring Meeting House
1106 West 10th Street
Wilmington, DE  19806
adalton@bdaltonlaw.com
bdalton@bdaltonlaw.com
ATTORNEYS FOR PLAINTIFF

Dated:  6/28/16

EFiled: Jul 15 2016 12:35PM EDT
Transaction ID 59284304
Case No. N16C-07-115 FWW

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| TIFFANY GREENFIELD | : |
| as Next Friend and Guardian | : |
| *ad litem* for | : |
| ETHAN FORD, a minor | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : C. A. NO. |
| | : |
| BUDGET OF DELAWARE, INC., | : |
| A Delaware Corporation; | : |
| DFS DIRECTOR LAURA MILES, | : |
| *individually and in her official* | : |
| *capacity*; DFS DIRECTOR | : |
| VICTORIA KELLY PSY.D., | : |
| *individually and in her official* | : |
| *capacity*; FAMILY CRISIS | : |
| THERAPIST TRINA N. SMITH, | : |
| *individually and in her official* | : |
| *capacity*; JAMIE ZEBROSKI | : |
| M.S.W., *individually and in her* | : |
| *official capacity as a Supervisor for* | : |
| *DFS;* CRYSTAL BRADLEY, M.S., | : |
| *Individually and in her official* | : |
| *capacity as a Senior Family Services* | : |
| *Specialist for DFS*; JAVONNE RICH | : |
| *Individually and in her capacity as a* | : |
| *Master Family Service Specialist for* | : |
| *DFS*; ADDITIONAL DFS STAFF | : |
| WHOSE NAMES AND TITLES | : |
| ARE CURRENTLY UNKNOWN; | : |
| | : |
| | :NON-ARBITRATION CASE |
| | : |
| | : |
| Defendants. | : JURY TRIAL OF 12 DEMANDED |

1

## CIVIL COMPLAINT

Comes now, Tiffany Greenfield, as next friend and guardian *ad litem* of Ethan Ford ("Plaintiff"), by and through his attorney, Andrew C. Dalton, Esq., of Dalton & Associates, P.A. and brings his Complaint against the Budget Motor Lodge, in New Castle, Delaware; DFS Director Laura Miles, individually and in her official capacity; DFS Director Victoria Kelly Psy.D., individually and in her official capacity, Family Crisis Therapist Trina N. Smith individually and in her official capacity, Jamie Zebroski M.S.W., individually and in her official capacity; Crystal Bradley, M.S. individually and in her official capacity as a Senior Family Services Specialist; and Javonne Rich, individually and in her official capacity as a Master Family Service Specialist for DFS.

In addition, based on information and belief, Plaintiff will be naming further individuals who were potentially, directly, and or personally involved in the course of their duties for DFS, in the failures which underpin this action, whose specific identities and titles can only be known by Plaintiff through the discovery process. Plaintiff hereby demands a trial by jury of twelve. In support thereof, Plaintiff asserts as follows:

1.      PLAINTIFF ETHAN FORD is a minor child who resides at, 331 South Heald St. Wilmington, Delaware 19801, with his Aunt, and permanent guardian *ad litem*, Tiffany Greenfield.

2

2.      DEFENDANT BUDGET OF DELAWARE, INC. is a Delaware

Corporation doing business as: Budget Motor Lodge, in New Castle Delaware,

with a registered agent listed as Balu C. Patel, 140 South DuPont Highway,

New Castle, Delaware 19720, where Ethan Ford resided for several months

prior to, and through, the death of his sister, Autumn Milligan, in August of

2014.

3.      DEFENDANT DFS DIRECTOR LAURA MILES, is a former

Director of the Division of Family Services ("DFS"), a Division of Delaware's

Department of Services for Children, Youth, and their Families ("DSCYF")

during the timeframe which encompasses this action, and is being named in her

personal and official capacity as the Director of DFS, involved in the case of

Ethan Ford.

4.      DEFENDANT DFS DIRECTOR VICTORIA KELLY PSY. D., was

the Director of the Division of Family Services ("DFS"), a Division of

Delaware's Department of Services for Children, Youth, and their Families

("DSCYF") during the timeframe which encompasses this action, and is being

named in her personal and official capacity as the Director of DFS, involved in

the case of Ethan Ford.

5.      DEFENDANT TRINA N. SMITH, was a Family Crisis Therapist for

the Division of Family Services ("DFS"), a Division of Delaware's Department

3

of Services for Children, Youth, and their Families ("DSCYF") during the timeframe which encompasses this action, and is being named in her personal and official capacity as a Family Crisis Therapist for DFS, involved in the case of Ethan Ford.

6.    DEFENDANT JAMIE ZEBROSKI, M.S.W., was an Investigation Supervisor for the Division of Family Services ("DFS"), a Division of Delaware's Department of Services for Children, Youth, and their Families ("DSCYF"), and held other titles as well, during the timeframe which encompasses this action, and is being named in her personal and official capacity as an Investigation Supervisor for DFS, involved in the case of Ethan Ford.

7.    DEFENDANT CRYSTAL BRADLEY, M.S., was a Senior Family Services Specialist for the Division of Family Services ("DFS"), a Division of Delaware's Department of Services for Children, Youth, and their Families ("DSCYF"), and may have held other titles as well, during the timeframe which encompasses this action, and is being named in her personal and official capacity for DFS, involved in the case of Ethan Ford.

8.    DEFENDANT JAVONNE RICH was a Master Family Service Specialist for the Division of Family Services ("DFS"), a Division of Delaware's Department of Services for Children, Youth, and their Families

4

("DSCYF"), and may have held other titles as well, during the timeframe which encompasses this action, and is being named in her personal and official capacity as a Master Family Service Specialist for DFS, involved in the case of Ethan Ford.

9.      ADDITIONAL DEFENDANTS to be named upon the discovery of their names, were also Investigation Supervisors, Therapists, Employees, Agents and or Apparent Agents for the Division of Family Services ("DFS"), a Division of Delaware's Department of Services for Children, Youth, and their Families ("DSCYF") during the timeframe which encompasses this action, and will be named in their personal and official capacity as Investigation Supervisors for DFS, involved in the case of Ethan Ford.  Throughout the complaint, references to DFS caseworkers making contact with Ethan, or his birth mother, Tanasia Milligan, are not specifically identified as discovery is needed to match each name to the dates of contact, however the above-named, and to-be-named individuals, are hereby incorporated by reference to the foregoing.

**FACTS**[1]

---

[1] These facts are sourced in large part from stories that have been widely publicized in The News Journal, as well as other media outlets, along with personal observations of the Plaintiff, and his permanent guardian and maternal Aunt, Tiffany Greenfield.  In addition, documents directly from DFS (a division of DSCYF) in possession of Tanasia Milligan were obtained from a storage locker following the death of Ethan's sister Autumn.

10.     The Division of Family Services (DFS) represents an essential intersection of governmental duty, civic and familial responsibility, and a deeply held conviction shared by all citizens that the most vulnerable among us deserve, and in some cases require, our greatest protection.  Through an extraordinary array of overlapping resources, staff, and statutory mandates, DFS is granted an exceptional degree of power over the lives of the citizens with whom they interact. These powers are not unilateral, or without oversight, but they vest with DFS, through their Directors, staff, and agents primarily, as a reflection of the profound degree of public trust and physical resources that they are granted.  When DFS agents act within the scope of their duties and powers, conducting thorough investigations and closely monitoring prescribed treatment plans, DFS caseworkers and investigation supervisors are supposed to, and often do, protect children from considerable harm.  When they fail to act in accordance with their duties, in dereliction of the public trust, and a reckless disregard for the grant of authority they are given, the results as they were for Plaintiff Ethan Ford, are nothing less than needless suffering and unspeakable horror.  Not acting in the face of a mandatory, statutory, and moral duty to do so, is the *sine qua non* of gross negligence, and reckless disregard, and here Ethan received nothing less than that from the very same state actors who were duty bound to protect him.

6

11.     Over the course of five (5) years, culminating in the death of his half-sister Autumn Milligan on August 8th of 2014, DFS by and through their agents conducted no less than four (4) faulty, grossly negligent and or reckless investigations that ignored a history of ongoing, unresolved risks in the home, numerous calls from relatives of Ethan and Autumn requesting state action, reports of their destitute living conditions and developmental delays, and failed to carry out *their own statutorily-imposed and mandatory duties* as DFS directors, caseworkers, investigation supervisors, specialists, agents and apparent agents. The effect of this dizzying menagerie of long-standing and repeated failures left Ethan and Autumn to fend for themselves.  As a result, Autumn is dead, and Ethan will remain profoundly damaged, and developmentally stunted as well as completely barred from the opportunity for normalcy, for the rest of his life.

12.     Ethan Ford was born on January 19, 2009.  DFS investigated Ms. Milligan on at least four (4) separate occasions between Ethan's birth and Autumn's tragic death in August of 2014.  Caseworkers throughout these investigations noted that Ethan and Autumn could barely speak, were developmentally delayed, and wore diapers much longer than appropriate for their ages.  Caseworkers also continued to note complaints about Ms. Milligan's drug abuse, the children's rotting teeth, and marks on the children's bodies.  Throughout these investigations the status and categorization of the harm to the children

observed would change, but in each case, either through gross negligence recklessness, or a combination of the two, DFS failed to act in accordance with their duty.

13.      Specifically, in January 2009, following Ethan's birth, hospital tests detected marijuana in Ethan's system.  DFS was notified and assigned a "P1" label to the case—the highest level of priority at DFS. A P1 level requires authorities to make face-to-face contact with the child and family within 24 hours.  When first interviewed, Ms. Milligan admitted to the caseworker that she smoked marijuana while pregnant with Ethan because it helped with her nausea.  The caseworker assigned to the case attempted twice to schedule a meeting with Ms. Milligan for a drug evaluation; however, a drug screen was never completed.  The caseworker did visit the home in Bear where Ms. Milligan then resided with Ethan.  The caseworker determined Ethan was "was well-cared for."  The case was closed after 41 days as "unsubstantiated with concern."

14.      The second DFS investigation arose after Ethan and Autumn were found outside after midnight in diapers.  About 1:00 a.m. on September 8, 2012, a neighbor found Ethan and Autumn outside and called Middletown police.  DFS was notified around 4:00 a.m. that same morning.  Ms. Milligan's sixteen-year-old brother, Tevin, had been watching the children for Ms. Milligan and had fallen asleep. The children then left the house through a broken screen door and were

8

running around outside in their diapers. No charges ever materialized, and the case was assigned a "P3" label—the lowest priority in the DFS system. The caseworker assigned to the case met with Ms. Milligan twice following the incident, only once with Ethan and Autumn present, and determined both children were developmentally delayed. Ms. Milligan did not follow through with program referrals and failed to have Ethan and Autumn evaluated. After six (6) failed attempts to follow-up with Ms. Milligan, DFS closed the case within 55 days as "unsubstantiated with concern."

15.     The third DFS investigation arose out of a Spring 2013 incident in Smyrna when caseworkers investigated allegations that the children were locked in a room for long periods of time and could not communicate appropriately. Although this was the third official investigation opened against Ms. Milligan, the case was assigned the lowest level of priority at DFS. The individual caseworker assigned to this case met with Ms. Milligan, twice with Ethan and Autumn present, and determined that the children were clean and well fed, but developmentally delayed. Defendant Kelly, head of the Delaware DFS, has indicated that by this third investigation, those involved should have thought to look into whether a pattern was developing "and begin to look at the mounting weight of the history and what that might say." Yet the case was closed as "unsubstantiated" after 46 days. An internal review later noted that a caseworker failed to fill out a risk

9

assessment form in accordance with their own policy, which led to the case closing prematurely, and as admitted by Defendant Kelly, improperly.

16.     By the fall of 2013, Ms. Milligan was living at the Budget Motor Lodge in New Castle with her children and Mr. Willie Reeder, Ms. Milligan's boyfriend and 'pimp.' Residents noted that Ms. Milligan often hit her children for misbehaving and that both children were often locked in the motel room alone. These conditions and events were at all times well known to those agents of Budget Motor Lodge tasked with the maintenance and operation of a business operating under the laws of Delaware as a place for public accommodation.  The staff, employees, owners and or agents of Budget Motor Lodge also failed in their duty to provide a safe premises, and failed to notify the proper authorities upon discovering the ongoing criminal nature of Ethan and his sister's circumstance. Allowing the children to be abused under their roof, all the while holding themselves out as a business open for public use, is not only morally reprehensible, but is also is gross negligence and recklessness, and at the very least a dereliction of the duty of care they owe to their patrons.

17.     On April 7, 2014, Ms. Milligan and Mr. Reeder appeared at her sister's house, Tiffany Greenfield, to pick up the children while under the influence of drugs. Ms. Greenfield refused to permit the children to go with the couple, but Mr. Reeder barged into the home and forcibly took the children from the home.

Ms. Greenfield, and Ms. Milligan's other sisters called the child-protection hotline, which eventually resulted in the fourth DFS investigation against Ms. Milligan. This case was assigned a "P1" label—the highest level of priority at DFS. Although the sisters mentioned marks on the children's bodies, Vicky J. Kelly, head of the Delaware DFS, later reported that the caseworkers' notes did not indicate that an examination was ever completed, again in dereliction of their own mandatory policies and duties. A caseworker met with Ms. Milligan and her children at the motel multiple times over a period of 52 days and found both children to be significantly developmentally delayed. Thereafter, that caseworker reportedly spoke with Ms. Milligan by phone six (6) additional times, but four (4) subsequent attempts to reach her by phone were unsuccessful. Although this was the fourth investigation against Ms. Milligan, an internal review later published in the local paper of record noted that caseworkers failed to interview motel residents or other collateral contacts that could have been helpful in providing the information needed to adequately investigate the claims by Ms. Milligan's sisters that she was neglecting and abusing Ethan and Autumn. Of course, Defendant Kelly need not rely on the observations of hotel guests and employees, as the mountain of data showing that these children were in danger of imminent loss of life was all over their own files. Those tasked with knowing the history and context of these allegations of child abuse need only look at the very same history

11

.

they documented, tragically, they did not- or if they did acted with extreme

recklessness in disregarding it. This tragedy was not a failure of information, but

of action.

18.     This fourth case was closed on May 29, 2014 as "unsubstantiated with

concern," but moved into treatment, incredibly, for only the first time. Although

Ms. Milligan had originally permitted DFS to send the children to medical

treatment with a pediatrician and agreed to undergo drug screening, she later failed

in many respects to comply with the caseworker's prescribed, mandatory treatment

plan for her and the children. Caseworkers were aware that Ms. Milligan had

completely ignored the mandatory conditions placed on her through her DFS

prescribed treatment plan, but failed to hold her accountable, or act in any way

other than to falsely certify that the case had been "closed," as a product of some

form of thoughtful review. In reality to call it 'thoughtless' would be far too kind,

and Plaintiff instead employs the terms: reckless, and grossly negligent.

19.     Less than three months after Ms. Milligan's fourth DFS so-called

"investigation," and as a direct and proximate result of the gross negligence,

dereliction of duty, and recklessness by the individual caseworkers and their

respective supervisors, directors and agents, acting under the color of state law, by

and through the extraordinary grant of authority to DFS and its staff, Autumn

Milligan is dead, and Ethan Ford was permanently and irrevocably damaged in

12

ways that are impossible to know the full scope of at the present time, certainly will result in the need for, *at the very least*, long-term care and psychological services throughout his life.

## COUNT I

### NEGLIGENCE, GROSS NEGLIGENCE, AND RECKLESSNESS
### (Against All Defendants)

20.   Plaintiff reasserts the foregoing paragraphs as if fully set forth herein.

21.   Defendants Miles, Kelly, Smith, Zeboski, Bradley, and Rich, and Additional Defendants, were negligent, grossly negligent, and reckless in their performance of their duties with respect to the care of Ethan Ford as set forth above.

22.   Defendant Budget Motor Lodge was negligent, grossly negligent, and or reckless in that their agents apparent agents and or employees, in the course and scope of their duties, knew or reasonably should have known that criminal child abuse against Ethan and his sister were occurring, as well as illegal conduct, including drugs, prostitution, etc., on their premise making the harm to Ethan likely and imminently foreseeable, and in so doing rendered the premises unsafe.

WHEREFORE, Plaintiff demands judgment against the Defendants for such general and special, and punitive damages, as the jury will award plus costs and interest.

13

## COUNT II

### CIVIL RIGHTS VIOLATIONS UNDER
### 42 U.S.C. § 1983 AND THE UNITED STATES AND
### DELAWARE CONSTITUTIONS
### (Against All DSCYF/DFS Defendants)

23.     Plaintiff reasserts the foregoing paragraphs as if fully set forth herein.

24.     Defendants Miles, Kelly, Smith, Zeboski, Bradley, and Rich, and

Additional Defendants ("DFS Defendants") were negligent, grossly negligent, and

reckless in their dereliction of mandatory duties imposed upon them pursuant to

the grant of authority and powers given to the Division of Family Services in their

personal and official capacities as state actors.  As such, they violated Plaintiff

Ethan's equal protection and due process rights under the U.S. and Delaware

Constitutions and 42 U.S.C. § 1983.

25.     Specifically they all failed to act in accordance with their duties under

*inter alia* 29 *Del. C.* § 9003, 16 *Del. C.* §§ 901, 902, 906(e)(2), (3) and (8) - (14),

all of which delineate non-discretionary duties of the DSCYF, the DFS, or both,

and in so doing acted negligently grossly negligent, or recklessly.

WHEREFORE, Plaintiff demands judgment against the Defendants for such

general and special, and punitive damages, as the jury will award plus costs and

interest.

14

## COUNT III

### STATE CREATED DANGER UNDER 42 U.S.C. § 1983
#### (Against all DFS Defendants)

26.     Plaintiff reasserts the foregoing paragraphs as if fully set forth herein.

27.     DFS Defendants individually and collectively, as agents and employees and or directors or officers of the Division of Family Services, established a special relationship with the Plaintiff Ethan Ford that had the effect of restricting his liberty and triggering liability for the affirmative acts or omissions of the state actors specifically named herein, or to be named in accordance with the foregoing.

WHEREFORE, Plaintiff demands judgment against the Defendants for such general and special, and punitive damages, as the jury will award plus costs and interest.

## COUNT IV

### NEGLIGENT, GROSSLY NEGLIGENT, AND RECKLESS HIRING, RETENTION AND SUPERVISION
#### (Against Defendants Miles, and Kelly)

28.     Plaintiff reasserts the foregoing paragraphs as if fully set forth herein.

29.     Defendants Miles and Kelly, where at all times relevant to allegations contained herein DFS Directors, and as such held supervisory control over the actions of their employees, the other named, and to-be-named employees and agents of DFS.

15

30.    These defendants acted under the color of state law, and with gross negligence and or recklessness when they hired, trained, and continued to employee the other named DFS Defendants in there capacity as caseworkers, social workers, therapists, and DFS employees or agents when they knew or should have know that these employees (themselves state actors) were performing their duties in a negligent, grossly negligent, and or reckless fashion, likely to cause harm or the deprivation of Ethan Ford's statutorily established, and constitutionally mandated rights under the Delaware and United States' constitution, to be free from a denial of *inter alia* due process and equal protection under the law.

WHEREFORE, Plaintiff demands judgment against the Defendants for such general and special, and punitive damages, as the jury will award plus costs and interest.

## COUNT V

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

31.    Plaintiff reasserts the foregoing paragraphs as if fully set forth herein.

32.    As a result of Defendants' conduct, Plaintiff suffered severe personal injuries, pain and suffering, emotional distress, all of which may be permanent, and expose him to medical expenses, lost earnings, and lost earning capacity and other damages, including psychological damage, anxiety, and depression.

16

33.     The severity of the disregard of duty and the use of recklessness and gross negligence on the part of all Defendants is sufficient to shock the conscience of any trier of fact, and ultimately expose these Defendants to the imposition of punitive damages, among other asserted damages.

WHEREFORE, Plaintiff demands judgment against the Defendants for such general and special, and punitive damages, as the jury will award plus costs and interest.

## COUNT VI

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendant Budget Motor Lodge)

34.     Plaintiff reasserts the foregoing paragraphs as if fully set forth herein.

35.     As a Motel operator in Delaware Budget of Delaware, Inc., d/b/a Budget Motor Lodge has a duty, under Delaware law, to maintain the business owner's premises in a reasonably safe condition for the use of its patrons. Defendants here acted with negligence, gross negligence and or recklessness in their failure to maintain a safe premises for two minor children who were the long standing victims of open and clearly visible criminal acts, in full knowledge of the Budget Motor lodge staff and agents, while they resided, for a period of several months in 2014 at the Budget Motor Lodge in New Castle Delaware.

17

WHEREFORE, Plaintiff demands judgment against the Defendants for such general and special, and punitive damages, as the jury will award plus costs and interest.

Dalton & Associates, P.A.

/s/ Andrew C. Dalton
Andrew C. Dalton, Esq. (ID 5878)
Bartholomew J. Dalton, Esquire (ID 808)
Cool Spring Meeting House
1106 West Tenth Street
Wilmington, DE  19806
(302) 652-2050
Attorneys for Plaintiff
ADalton@BDaltonlaw.com

Date:  7/15/16

18